Justice D. Turner
California Bar No. 336579
(*Pro Hac Vice*)
**CARPENTER & ZUCKERMAN**
8827 W. Olympic Blvd.
Beverly Hills, California 90211
Telephone: (310) 273-1230
Fax: (310) 858-1063
*jturner@cz.law*
**Attorneys for Plaintiff**

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF FLORIDA -TAMPA DIVISION

| | | |
|---|---|---|
| JAMIE BURGOS, | ) | **Case No.:** 8:22-cv-01171-KKM-TGW |
| | ) | |
| Plaintiff, | ) | **COLLECTIVE ACTION** |
| | ) | |
| v. | ) | **PLAINTIFF'S NOTICE OF MOTION** |
| | ) | **AND MOTION FOR PARTIAL** |
| EMPEROR'S TAMPA INC. | ) | **SUMMARY JUDGMENT** |
| dba EMPEROR'S GENTLEMEN'S CLUB | ) | |
| fka "DIAMONDS", a Florida Corporation; | ) | **ORAL ARGUMENT REQUESTED** |
| ENTERTAINMENT 2851 LLC, dba | ) | |
| EMPEROR'S GENTLEMEN'S CLUB fka | ) | |
| "DIAMONDS" a Florida Limited Liability | ) | |
| Company; MICHAEL TOMKOVICH, an | ) | |
| individual; and DOES 1 through 10, | ) | |
| inclusive, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

 **TO THIS HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

 **NOW COMES** Plaintiff Jamie Burgos, (hereinafter "Plaintiff" or "Burgos") in the above referenced matter, by and through her undersigned counsel, will, and hereby does, move for partial

summary judgment against Defendants EMPEROR'S TAMPA, INC., dba EMPEROR'S GENTLEMEN'S CLUB, dba EMPEROR'S, INC., fka "DIAMONDS", ENTERTAINMENT 2851 LLC, dba EMPEROR'S GENTLEMEN'S CLUB fka "DIAMONDS," and MICHAEL TOMKOVICH (hereinafter, "Defendants") on the following issues:

1. Misclassification of Plaintiff by Defendants as an independent contractor when she was, in fact, an employee at Defendants' club "Emperor's";

2. Michael Tomkovitch was an employer and is therefore personally liable to Plaintiff under the Fair Labor Standards Act ("FLSA");

3. Defendants cannot meet their burden on their affirmative defense of good faith as a matter of law;

4. Defendants should receive no offsets for renumeration Plaintiff received from customers; and

5. Defendants' failure to comply with the dictates of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* was willful, entitling Plaintiffs to liquidated damages and extending Plaintiffs' statute of limitation from two (2) to three (3) years.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the declarations and exhibits thereto, the statement of undisputed facts, the pleadings, and all other papers on file in this action, and upon such other evidence and arguments as may be presented at the hearing on this matter.

Dated:  September 22, 2023

**CARPENTER & ZUCKERMAN**

*/s/ Justice D. Turner*

Justice D. Turner
***Attorneys for Plaintiff***

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................................... 1

II.  STATEMENT OF MATERIAL FACTS .................................................................... 1

III. LEGAL STANDARD ............................................................................................ 5

IV.  PLAINTIFF IS ENTITLED TO PARTIAL SUMMARY JUDGMENT BECAUSE DEFENDANTS MISCLASSIFIED PLAINTIFF AS AN INDEPENDENT CONTRACTOR........................................... 6

    A.   DEFENDANTS EXERCISED SIGNIFICANT CONTROL OVER PLAINTIFF........................ 8

    B.   PLAINTIFF LACKED CONTROL OVER HER OPPORTUNITY FOR PROFIT OR LOSS AND USED NO MANAGERIAL SKILL WHILE WORKING AT EMPEROR'S ................................. 10

    C.   DEFENDANTS' INVESTMENTS IN EMPEROR'S GREATLY EXCEEDED PLAINTIFF'S INVESTMENTS ................................................................................................. 11

    D.   NO SPECIAL SKILL IS REQUIRED TO PROVIDE ADULT ENTERTAINMENT DANCES 12

    E.   DEFENDANTS HIRED PLAINTIFF TO WORK AT EMPEROR'S INDEFINITELY ........... 12

    F.   PLAINTIFF'S WORK WAS AN INTEGRAL PART OF DEFENDANTS' BUSINESS .......... 13

V.   MICHAEL TOMKOVITCH IS INDIVIDUALLY LIABLE TO PLAINTIFF AS HER EMPLOYER 13

VI.  PLAINTIFF IS ENTITLED TO PARTIAL SUMMARY JUDGMENT BECAUSE DEFENDANTS CANNOT MEET THEIR BURDEN ON THEIR AFFIRMATIVE DEFENSE OF GOOD FAITH.......... 15

VII. PLAINTIFF IS ENTITLED TO PARTIAL SUMMARY JUDGMENT CONFIRMING THAT DEFENDANTS SHOULD RECEIVE NO OFFSET FOR PLAINTIFF'S WAGES ............................... 16

VIII. PLAINTIFF IS ENTITLED TO PARTIAL SUMMARY JUDGMENT CONFIRMING DEFENDANTS' FAILURE TO COMPLY WITH THE DICTATES OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. §§ 201, ET SEQ. WAS WILLFUL ................................................................ 19

IX.  CONCLUSION..................................................................................................... 20

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ................................................ 5

*Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388 ......................................................... 15

*Betras v. Oli-Car Inc.*, No. 2:21-CV-00873-CCW, 2021 WL 5239938 .................................. 17

*Brant v. Schneider National, Inc.*, 43 F.4th 656 ...................................................... 9

*Celotex Corp.*, 477 U.S. at 323 ..................................................................... 6, 20

*Compere v. Nusret Miami, LLC*, 28 F.4th 1180, 1186-87 (11th Cir. 2022) .......................... 16

*Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ................................... 6

*Gardner v. Country Club, Inc.*, No. 4:13-cv-03399-BHH, 2015 WL 7783556 (D.S.C. June 3, 2016) .............................................................................................. 7

*Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28 ............................................... 7

*Harrell v. Diamond A Entm't, Inc.*, 992 F.Supp. 1343, 1348 (M.D. Fla. 1997) ...................... 7

*Henderson v. 1400 Northside Drive, Inc.*, 110 F. Supp. 3d 1318 ..................................... 18

*Lamonica v. Safe Hurricane Shutters* 711 F.3d 1299 (11th Cir. 2013) ............................... 15

*Levi v. Gulliver's Tavern, Incorporated*, No. 15-cv-216-WES, 2018 WL 10149710 (D.R.I. Apr. 23, 2018) ...................................................................................................... 7

*Luder v. Endicott*, 253 F.3d 1020 .................................................................... 14

*Mays v. Rubiano, Inc., 560 F. Supp. 3d 1230* ................................................... 11, 12

*McFeeley v. Jackson St. Ent., LLC*, 47 F. Supp. 3d 260, 279 (D. Md. 2014). ............... 7, 11, 17

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 ................................................. 19, 20

*Morse v. Mer Corp.*, No. 1:08-cv-1389, 2010 WL 2346334 at *4 (S.D. Ind. June 4, 2010) .... 11

*Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 .................................................. 7

*Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570 ............................................... 17

*Rutherford Food Corp. v. McComb*, 331 U.S. 722 ................................................... 6

*Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308 ..................................................... 8

*Schofield v. Gold Club Tampa*, Inc., No. 8:19-CV-3097-VMC-TGW, 2021 WL 533540 (M.D. Fla. Feb. 12, 2021) ............................................................................... *passim*

*Thompson v. Linda And A., Inc.*, 779 F. Supp. 2d 139, 149 (D.D.C. 2011) ......................... 10

*United States Dept. of Labor v. Cole Enterprises, Inc.*, 62 F.3d 775 ............................... 14

*United States v. Rosenwasser*, 323 U.S. 360 ........................................................ 6

*Vaughn v. Paradise Entm't Group, Inc.*, No. 14-CV-00914-SCJ, Dkt. 190, (N.D. Ga. Mar. 15, 2016) ..................................................................................................... 7

*Villarreal v. Woodham*, 113 F.3d 202, 205 (11th Cir. 1997) ......................................... 8

*Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419* ................................... 16

*Walsh v. Freeman Sec. Servs., Inc.*, No. 8:21-CV-217-VMC-AEP, 2022 WL 445501, at *6 (M.D. Fla. Feb. 14, 2022) ................................................................................. 8

## Statutes

29 C.F.R. § 531.35 .................................................................................... 17

29 U.S.C. § 203 ................................................................................... 6, 15

29 U.S.C. § 260 ...................................................................................... 15

29 U.S.C. §§ 201 ...................................................................................... 1

29 U.S.C.A. § 206 ................................................................................ 1, 17

# I. INTRODUCTION

Plaintiff was an exotic dancer for defendants Emperor's Tampa, Inc. dba Emperor's, Inc., dba Emperor's Gentlemen's Club dba EMTB, LLC fka "Diamonds" (hereinafter, "Emperor's"), Michael Tomkovitch ("Tomkovitch"), and briefly for Entertainment 2851, LLC dba Emperor's Gentlemen's Club fka "Diamonds" (collectively, "Defendants"), primarily at Defendants' club "Emperor's" or located at 5718 E Adamo Dr., Tampa, Florida 33619. As showcased above, Defendants use multiple shell entities to hide ownership and evade liability, but all entities are owned by Defendant Tomkovitch. The entities at issue here are located at 5718 E Adamo Dr., Tampa, Florida 33619 where Plaintiff worked as an exotic dancer. Plaintiff was misclassified as an independent contractor instead of an employee. Plaintiff was not paid wages for her work at Emperor's. Defendants failed to make any changes to try and comply with the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. ("FLSA").

Plaintiff's claims arise from Defendants' willful actions while Plaintiff was employed by Defendants. Plaintiff is now pursuing this action to recover the unpaid wages and other damages owed to her during the statutory time from 2019 to 2021. Plaintiff was denied minimum wage payments as part of Defendants' scheme to classify Plaintiff as an "independent contractor." Defendants failed to pay Plaintiff a minimum wage for all hours worked in violation of 29 U.S.C. §§ 206 of the FLSA. Defendants also charged Plaintiff to work. Furthermore, Defendants' practice of failing to pay tipped employees pursuant to 29 U.S.C. § 203(m) violates the FLSA's minimum wage provision. *See* 29 U.S.C. § 206.

# II. STATEMENT OF MATERIAL FACTS

1. Emperor's is an exotic adult-entertainment facility, also known as a gentlemen's club, in Tampa, Florida where topless dancers are the primary form of

entertainment. Emperor's is located at 5718 E Adamo Drive, Tampa, Florida 33619. Dancers are the main attraction at Emperor's, enticing and entertaining customers with good looks, dances, and private dances. Declaration of Jamie Burgos ("Burgos Decl.") ¶ 2.

2. Tomkovitch owns Emperor's Tampa, Inc. dba Emperor's, Inc., which is the parent company of Emperor's. Emperor's set the rules, policies, and procedures regarding exotic dancers. Mr. Tomkovitch had the authority to decide who could be hired and who would be fired. Tomkovitch also controlled the conditions of employment as the owner. Declaration of Justice D. Turner, Esq. ("Turner Decl.") ¶ 3, Exhibit ("Ex.") 2 – Deposition of Michael Tomkovitch ("Michael Dep.") at 8:15-20; Burgos Decl. ¶ 5.

3. Emperor's employed Ms. Burgos from 2001 through 2021, but there was no limit to how long she was hired or allowed to work for Emperor's. Ms. Burgos' primary role at Emperor's was to dance semi-nude to provide entertainment for customers. Burgos Decl. ¶ 3.

4. Dancers at Emperor's are hired based on their attractiveness, not their skill. Ms. Burgos did not use any managerial skill at Emperor's. Burgos Decl. ¶ 4.

5. Emperor's generally allows walk-in auditions and if a dancer is attractive, they will be hired promptly, sometimes even that same day. Emperor's had no major requirements for dancers to work except that they are of legal age and are willing to dance nude or semi-nude. To be hired and to continue working at Emperor's and other clubs owned by Tomkovitch, dancers must sign paperwork, including a form choosing whether to be an independent contractor or an employee. Plaintiff had no legal representation while making this decision, but Emperor's indicated that Plaintiff should agree with being an independent contractor. Burgos Decl. ¶ 6; Turner Decl. ¶ 2, Ex. 1, ¶ 4, Ex. 3.

6.     Emperor's and Tomkovitch were in total control of Emperor's. Emperor's and Tomkovitch hired the club's other employees, not the dancers. Burgos Decl. ¶ 7; Turner Decl. ¶ 3, Ex. 2. Michael Dep. at 62:14-63:23.

7.     Ms. Burgos was subject to Emperor's' rules, policies, and procedures. Emperor's set the club's opening and closing hours, not the dancers. The dancers did not have keys to Emperor's. Ms. Burgos could not work at Emperor's outside of the club's hours. Ms. Burgos, along with other dancers, was not involved in setting Emperor's hours. Ms. Burgos, along with other dancers, could work for Emperor's only when Emperor's management and Tomkovitch decided to open the club. Burgos Decl. ¶ 8; Turner Decl. ¶ 3, Ex. 2. Michael Dep. at 64:6-7.

8.     Dancers maintained no authority or discretion to expel a customer from Emperor's. Burgos Decl. ¶ 10, 17.

9.     Emperor's advertised via videos and pictures on social media and also had print flyers. Emperor's and Tomkovitch paid for this advertising, not the dancers. Turner Decl. ¶ 3, Ex. 2. Michael Dep. at 64:8-11, 70:18-20; Burgos Decl. ¶ 9.

10.    There is a cover charge that customers pay to enter Emperor's. Emperor's, not dancers, had authority over which customers could enter and which customers were asked to leave the club. Emperor's set the cover charge for Emperor's and dancers had no input or control on this price. Burgos Decl. ¶ 10.

11.    DJs play the music at Emperor's. Emperor's set rules for the DJs at Emperor's including the type of music to be played. Emperor's has a stage for dancers. The DJ calls dancers when it is their turn to dance on stage. Dancers at Emperor's often dance semi-nude on stage. Burgos Decl. ¶ 11.

12.    Besides dancing on stage, dancers perform dances on the floor for customers. Emperor's set the price for the table lap dances. Dancers did not have authority to set base dance prices at Emperor's. Burgos Decl. ¶ 12.

13.     Dancers at Emperor's also performed VIP dances in semi-private booths. Emperor's set the base prices for the VIP dances. VIP dances are charged by time increments per Emperor's' policy. Customers would pay dancers for this entertainment as well as for stage or floor dances. However, customers would give the money for dancers' VIP and floor dances to Emperor's first. For example, if a customer wanted a VIP dance, they would pay the club directly in advance. Emperor's would then keep track of the amount of money the dancer earned based on the number of customers the dancer danced for, and then at the end of the night, Emperor's would take a percentage of the money the dancer earned and give her the rest. Emperor's kept a percentage of all VIP dance fees. Ms. Burgos, along with other dancers, was required to split a portion of all dance fees with Emperor's. Ms. Burgos never received any wages from Emperor's. Customers were not told of any service charges regarding Ms. Burgos' dances. Burgos Decl. ¶ 13.

14.     Emperor's created rules that dancers at Emperor's must follow. Dancers were sometimes disciplined for violating Emperor's' rules, policies, and procedures. If there were ever disputes between customers and dancers at Emperor's, Emperor's' hosts, managers, or security would step in to resolve it. Burgos Decl. ¶ 14.

15.     Further, Emperor's forces dancers to pay a "stage fee," more commonly known as a "house fee" to work at Emperor's and increases the house fee for tardiness to "incentivize" dancers to show up for work on time rather than show up late. The amount of the stage fees was set by Emperor's and Tomkovitch and Ms. Burgos had no say in the amount. Emperor's sometimes required that dancers sign in when they arrived and then tip certain people at the club before they left. Burgos Decl. ¶ 15; Turner Decl. ¶ 3, Ex. 2 – Michael Dep. at 60:4-24.

16.     Emperor's paid for the stage at Emperor's and all of the equipment such as the poles, speakers, etc. Emperor's also paid the bills for the club. Dancers did not

pay for any of Emperor's' facilities, bills, utilities, dance poles, or advertising. Turner Decl. ¶ 3, Ex. 2 – Michael Dep. at 59:3-8, 70:21-71:1; Burgos Decl. ¶ 16.

17.     Ms. Burgos, along with other dancers, did not have authority or control as to whether a customer would be asked to leave Emperor's. Burgos Decl. ¶ 17.

18.     Ms. Burgos, along with other dancers at Emperor's, did not have any management responsibilities. Emperor's management determined the length of dancer shifts. Emperor's and Tomkovitch also decided when the club would open and close. Ms. Burgos could not choose to dance at the club outside of the times Tomkovitch and Emperor's decided the club would be open. Burgos Decl. ¶ 18.

19.     Tomkovitch, as the owner, ensured that Emperor's properly kept all employment records for dancers. Turner Decl. ¶ 3, Ex. 2 - Michael Dep. at 60:4-24. Defendant Tomkovitch was the owner of Gold Club which was sued on the same basis as this instant suit and this Court made the relevant ruling in the Schofield case. *See Schofield v. Gold Club Tampa*, Inc., No. 8:19-CV-3097-VMC-TGW, 2021 WL 533540 (M.D. Fla. Feb. 12, 2021); Turner Decl. ¶ 3, Ex. 2 – Michael Dep. 12:9-24, 36:15-19.

## III.  LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.* By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48. However,

conclusory allegations and speculation are insufficient to create a genuine issue of material fact. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." The moving party bears the initial burden of identifying those portions of the record demonstrating the lack of a genuinely disputed issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## IV. PLAINTIFF IS ENTITLED TO PARTIAL SUMMARY JUDGMENT BECAUSE DEFENDANTS MISCLASSIFIED PLAINTIFF AS AN INDEPENDENT CONTRACTOR

Plaintiff firstly moves for summary judgment on the issue of whether she, as an exotic dancer, is considered an employee of Emperor's under the FLSA. This Court has recently ruled on this issue and found in a similar case that dancers like Plaintiff are employees of exotic dance clubs. *See Schofield v. Gold Club Tampa, Inc.*, No. 8:19-CV-3097-VMC-TGW, 2021 WL 533540, at *9 (M.D. Fla. Feb. 12, 2021). In her operative Complaint, Plaintiff alleges she worked at Emperor's, located in Tampa, Florida. Defendants do not dispute this fact.

The requirements of the FLSA apply only to employees. An "employee" is defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The FLSA defines "to employ" as "to suffer or permit to work." 29 U.S.C § 203(g), and an "employer" as "any person acting . . . in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The FLSA broadly defines the "employer-employee relationship[s]" subject to its reach." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947)). The Supreme Court has even gone so far as to acknowledge that the FLSA's definition of an employer is "the broadest definition that has ever been included in any one act." *United States v. Rosenwasser*, 323 U.S. 360, 363.

Importantly, Exotic dance clubs' independent contractor arguments have been summarily rejected by district courts across the United States by liberal and conservative judges. The weight of the decisions is not close. ***Most district courts grant summary judgment to the Plaintiff.*** *See Harrell v. Diamond A Entm't, Inc.*, 992 F.Supp. 1343, 1348 (M.D. Fla. 1997) (There is no debate, as a matter of law, that exotic dancers such as the putative class members in this matter are "employees" under the FLSA); *Clincy v. Galardi South Enter., Inc.*, 808 F.Supp.2d 1326, 1346 (N.D. Ga. 2011) (summary judgment); *Vaughn v. Paradise Entm't Group, Inc.*, No. 14-CV-00914-SCJ, Dkt. 190, (N.D. Ga. Mar. 15, 2016)(summary judgment); *Levi v. Gulliver's Tavern, Incorporated*, No. 15-cv-216-WES, 2018 WL 10149710 (D.R.I. Apr. 23, 2018) (granting dancer plaintiff's partial summary judgment that they are employees under the FLSA); *McFeeley v. Jackson St. Ent., LLC*, 47 F. Supp. 3d 260, 279 (D. Md. 2014).

As the Court noted in *Gardner*, cases ruling in favor of clubs on this issue "are conspicuously thin and includes a 15-year-old decision from the District of Oregon and a two page order from the Eastern District of Arkansas granting the defendant's seemingly unopposed motion for summary judgment." *Gardner v. Country Club, Inc.*, No. 4:13-cv-03399-BHH, 2015 WL 7783556, at *12 (D.S.C. June 3, 2016).

When determining whether someone is an employee under the FLSA, "economic reality rather than technical concepts is to be the test of employment." *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33. Under this theory, the FLSA defines employer "expansively," *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326.

When determining the economic reality of the working relationship, courts generally consider six factors in what is known as the economic reality test: 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials

required for his task, or his employment of helpers; 4) whether the service rendered required a special skill; 5) the degree of permanence of the working relationship; and 6) whether the service rendered is an integral part of the alleged employer's business. *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1312 (11th Cir. 2013); *Walsh v. Freeman Sec. Servs., Inc.*, No. 8:21-CV-217-VMC-AEP, 2022 WL 445501, at *6 (M.D. Fla. Feb. 14, 2022). No single factor is dispositive, and the list is not exhaustive. *Id.* Each of the economic reality test factors below favors Plaintiff's status as an employee.

A. DEFENDANTS EXERCISED SIGNIFICANT CONTROL OVER PLAINTIFF

The Eleventh Circuit has found the following factors, among others, relevant to the control inquiry: "whether the alleged employer (1) had the power to hire and fire the employee, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Villarreal v. Woodham*, 113 F.3d 202, 205 (11th Cir. 1997). The Court has also found in favor of economic dependence where an alleged employer exclusively controls customer volume. See *Schofield v. Gold Club Tampa, Inc.*, No. 8:19-cv-3097-VMC-TGW, 2021 WL 533540, at *6 (M.D. Fla. Feb. 12, 2021) (finding exotic dancer to be a club employee in part due to the club's exclusive control over advertising and customer solicitation). "Courts considering the status of exotic dancers under the FLSA generally look not only to the guidelines set by the club regarding the entertainers' performances and behavior, but also to the club's control over the atmosphere and clientele." *Schofield v. Gold Club Tampa, Inc.*, No. 8:19-CV-3097-VMC-TGW, 2021 WL 533540, at *5 (M.D. Fla. Feb. 12, 2021) (quoting *Butler v. PP & G, Inc.*, No. CIV.A. WMN-13-430, 2013 WL 5964476, at *3 (D. Md. Nov. 7, 2013)).

Here, Defendants cannot contend that Emperor's did not exercise significant control over the manner of Plaintiff's work, as there is mountainous evidence to the

contrary. Emperor's created rules that dancers at Emperor's must follow. Burgos Decl. ¶ 14. Dancers were sometimes disciplined for violating Emperor's' rules, policies, and procedures. Burgos Decl. ¶ 14. Defendants required Plaintiff to sign in when she arrived and tip certain people at the club before she left. Turner Decl. ¶ 3, Ex. 2 – Michael Dep. at 60:4-24; Burgos Decl. ¶ 15. If Plaintiff wished to engage customers for dances at Emperor's during non-operational hours, Defendant's control over Plaintiff's workspace precluded her from doing so. Burgos Decl. ¶ 8, 18. Moreover, Defendants alone controlled the clientele allowed to enter and forced to leave the club. Burgos Decl. ¶ 10, 17. Furthermore, the small amount of discretion to engage, or not engage, a customer does not transmogrify Plaintiff into her own "economic entities" within Emperor's. *Brant v. Schneider National, Inc.*, 43 F.4th 656, 666.

Defendants created and enforced Emperor's rules, policies, and procedures. Burgos Decl. ¶¶ 5, 8, 13, 14. Dancers such as Plaintiff had to pay fees to work at Emperor's. Burgos Decl. ¶¶ 13, 15. Again, Emperor's rules plainly govern when and how Plaintiff must fulfill their employment duties with Emperor's. Burgos Decl. ¶ 10, 17. Defendants also require Plaintiff to pay a fee each shift to "incentivize" Plaintiff to arrive on time for work "rather than show up late." Burgos Decl. ¶ 15. Tomkovitch also kept employee records. Turner Decl. ¶ 3, Ex. 2 – Michael Dep. at 60:4-24.

Defendants controlled the conditions under which Plaintiff worked. Defendants set the prices that Plaintiff was forced to charge customers. Burgos Decl. ¶¶ 12, 13. Emperor's required Plaintiff to only work hours set by the club and Plaintiff was not allowed to work before the club opened or after the club closed. Burgos Decl. ¶ 8, 18. Emperor's thus exercised control over the amount of money Plaintiff may earn during her employment and when Plaintiff could maintain employment at Emperor's.

As shown above, Defendants' rules encompassed when Plaintiff worked, how Plaintiff performed their services, for whom Plaintiff performed their services, how

much money Plaintiff could collect from a customer, and where Plaintiff could perform their services. Defendants' control encompassed all aspects of Plaintiff' work. This factor therefore weighs in favor of finding that Plaintiff was Emperor's' employee under the FLSA and thus, Plaintiff's motion should be granted.

B. <u>Plaintiff Lacked Control Over Her Opportunity For Profit or Loss and Used No Managerial Skill While Working At Emperor's</u>

The focus in applying this factor "should remain on the worker's contribution to managerial decision-making and investment relative to the company's." *McFeeley*, 825 F.3d at 244; *Schofield v. Gold Club Tampa, Inc.*, supra, at *7. Any argument "…that dancers can 'hustle' to increase their profits — has been almost universally rejected." *Shaw*, 241 F. Supp. 3d at 1325; see also *Thompson v. Linda And A., Inc.*, 779 F. Supp. 2d 139, 149 (D.D.C. 2011); *Harrell*, 992 F. Supp. at 1352 (stating "[t]hat a dancer may increase her earnings by increased 'hustling' matters little" for determining opportunity for loss and/or profit). Instead, courts have routinely held that "where the clubs are primarily responsible for drawing customers to the club and set minimum fees for services, the clubs [ ] exercise significant control over the dancers' opportunity for profit." *Reich v. Circle C. Invest., Inc.*, 998 F.2d 324 (5th Cir. 1993). Most courts have found that the risk of loss is much greater for the club than for its entertainers. *Clincy v. Galardi S. Enters., Inc.*, 808 F. Supp. 2d 1326, 1346 (N.D. Ga. 2011) (collecting cases); see also Reich v. Priba Corp., 890 F. Supp. 586, 593 (N.D. Tex. 1995) ("[E]ntertainers do not control the key determinants of profit and loss of a successful enterprise.").

Plaintiff depended on Defendants' ability to attract customers, as well as Defendants' providing a building in which to work. Burgos Decl. ¶ 8. Plaintiff used no managerial skills while working as an exotic dancer at Emperor's. Burgos Decl. ¶ 4, 18. Emperor's required no special skill to be a successful dancer for Emperor's — only

attractiveness. Burgos Decl. ¶¶ 4, 6.

Defendants — not Plaintiff's skill — thus maintained primary control of Plaintiff's opportunity to profit from her employment with Emperor's. Therefore, this factor also heavily weighs in favor of finding that Plaintiff was Emperor's' employee under the FLSA. Plaintiff's motion should therefore be granted.

C. DEFENDANTS' INVESTMENTS IN EMPEROR'S GREATLY EXCEEDED PLAINTIFF'S INVESTMENTS

As with the second factor, the investment analysis focuses on the entertainer's investment relative to that of the club. *McFeeley*, 825 F.3d at 244. "[C]ourts which have addressed this factor have almost universally concluded that a dancer's investment is minor when compared to the club's investment." *Harrell*, 992 F. Supp. at 1350. Several courts that have addressed this factor of the economic realities test in relation to exotic dancers find, in short order, that it leans in favor an employer-employee relationship. *See Mays v. Rubiano, Inc., 560 F. Supp. 3d 1230,* 1236 ("The Company expended most of the fund necessary to operate Danzers, and any costs incurred by [Plaintiff] were minor or incidental, such as the costs for costumes. . . ."); *Morse v. Mer Corp.*, No. 1:08-cv-1389, 2010 WL 2346334 at *4 (S.D. Ind. June 4, 2010) ("Plaintiff 'do not make any capital investment in Defendant's facilities, advertising, maintenance, security, staff, sound system and lights, food, beverage, and other inventory.' Thus,. . . this factor tips in favor of employee status.").

The same is true here. Defendants own the space used to operate Emperor's. Burgos Decl. ¶ 5. Defendants own the stage used to operate Emperor's. Defendants also own the poles that dancers use to perform their duties at Emperor's. Burgos Decl. ¶ 16. Defendants further own the PA/speaker system used to emanate music through the club and facilitate Plaintiff' performances. Burgos Decl. ¶ 16. Plaintiff made no significant investment outside of her clothing and makeup. Emperor's also advertises

its own business through videos and social media. Burgos Decl. ¶ 9; Turner Decl. ¶ 3, Ex. 2 - Michael Dep. at 64:8-11. Emperor's pays for this advertising. Turner Decl. ¶ 3, Ex. 2 - Michael Dep. at 70:18-20; Burgos Decl. ¶ 9. Therefore, this third factor heavily weighs in favor of finding that Plaintiff was Emperor's' employee under the FLSA and thus, Plaintiff's motion should be granted.

## D. No Special Skill Is Required To Provide Adult Entertainment Dances

Other courts have nearly all held that "there is no special skill required to be an exotic dancer, pointing to the lack of instruction, certification, and prior experience required to become an exotic dancer." *McFeeley*, 47 F. Supp. 3d at 271–72 (citing cases); see also Clincy, 808 F.Supp.2d 1326, 1348 (N.D. Ga. 2011) (finding no special skill required even though club preferred prior experience and required dancers to audition). "Although different entertainers may possess varying degrees of skill, there is no indication that a high degree of skill or experience is necessary." *Stevenson v. Great Am. Dream, Inc.*, No. 1:12-CV-3359-TWT, 2013 WL 6880921, at *5 (N.D. Ga. Dec. 31, 2013); *Schofield*, *supra*, at 9. In fact, district courts throughout the nation find in short order that exotic dancing does not require specialized skill. *Rubiano*, 560 F.Supp.3d at 1236 ("The parties concede that exotic dancing doesn't require any specialized skills, supporting employment.").

Emperor's has no requirement that Plaintiff possess a certificate in dance, or other formal education or training. Burgos Decl. ¶¶ 4, 6. Plaintiff was qualified to work as a dancer at Emperor's because she was attractive and able to dance seductively, enticing customers to patronize Emperor's. Burgos Decl. ¶¶ 4, 6. Therefore, the fourth factor weighs in favor of finding that Plaintiff was Emperor's' employee under the FLSA. Plaintiff's motion should thus be granted.

## E. Defendants Hired Plaintiff To Work At Emperor's Indefinitely

Some courts have found that relationships with a club that extend over one year can signify permanence. *See Clincy*, 808 F.Supp.2d at 1348. Plaintiff's work relationship with Defendants was indefinite by its terms. Indeed, ***Plaintiff worked at Emperor's for almost twenty years*** and Defendants set no timeline on how long Plaintiff could work. Burgos Decl. ¶ 3. This factor thus weighs in favor of finding an employer-employee relationship between Plaintiff and Emperor's.

### F. PLAINTIFF'S WORK WAS AN INTEGRAL PART OF DEFENDANTS' BUSINESS

The sixth and final factor is "the extent to which the service rendered is an integral part of the alleged employer's business." *Scantland*, 721 F.3d at 1312. "Without exotic dancers, the Clubs would be ordinary bars, not strip clubs." Shaw, 241 F. Supp. 3d at 1327. The sixth factor weighs heavily in favor of finding employee status. *Schofield v. Gold Club Tampa, Inc.*, No. 8:19-CV-3097-VMC-TGW, 2021 WL 533540, at *9 (M.D. Fla. Feb. 12, 2021).

Here, as with all other strip clubs, exotic dancers are the main attraction at Emperor's, enticing customers with good looks, stage and lap dances, as well as private dances. Burgos Decl. ¶ 2. Dancers are the primary form of entertainment at Emperor's. Burgos Decl. ¶¶ 2, 3. Plaintiff worked at Emperor's as an exotic dancer. Burgos Decl. ¶¶ 2, 3. Therefore, this final factor also weighs in favor of finding an employer-employee relationship between Plaintiff and Emperor's.

With the above evidence, Defendants cannot justifiably defend their misclassification of Plaintiff based on any of the factors of the economic realities test. *See Celotex Corp.*, 477 U.S. at 323. Plaintiff has demonstrated that there is no genuine issue of material fact regarding Defendants' misclassification of Plaintiff. Plaintiff therefore requests this Court grant Plaintiff's motion as it relates to Defendants' misclassification of Plaintiff under the FLSA.

### V. MICHAEL TOMKOVITCH IS INDIVIDUALLY LIABLE TO PLAINTIFF AS HER

<u>**EMPLOYER**</u>

Michael Tomkovitch, as owner and operator of Emperor's, is liable to Plaintiff under the FLSA as her employer. The bar here is extremely low as this Circuit has held that individuals are liable under the FLSA even where those individuals were not officers of the corporation. In *Lamonica v. Safe Hurricane Shutters* (11th Cir. 2013), a federal appeals court ruled that any individual with control over an employer's financial affairs who could potentially cause an employer to violate FLSA regulations, even if he or she spends as little as one week a month at work.

In *Lamonicia*, two members of the defendant's board of directors argued she was entitled to a new trial in part because personal liability under the FLSA is limited only to corporate officers. The 11th Circuit rejected this interpretation stating:

> [W]hile it recognized personal liability for officers, Wargo did not purport to limit personal liability to officers, and the Act's broad definition of "employer" does not admit of such a limitation. As we have previously stated, whether an individual fits that definition "does not depend on technical or isolated factors but rather on the circumstances of the whole activity." In the typical case, a corporation's officers will exercise more operational control than its directors and therefore be more susceptible to personal liability. However, usual corporate roles are not always observed, and some directors may assume more operational control than some officers. Therefore, a supervisor's title does not in itself establish or preclude his or her liability under the FLSA."

Other Courts around the country also agree that individuals can be personally liable under the FLSA. *Luder v. Endicott*, 253 F.3d 1020, 1022 (7th Cir. 2001) (noting that a supervisor who uses his authority over the employees whom he supervises to violate their rights under the FLSA is individually liable for the violation); *United States Dept. of Labor v. Cole Enters., Inc.*, 62 F.3d 775, 778 (6th Cir.1995) (finding individual defendant liable under the FLSA where he had power over hiring, firing, rates of pay, schedule and payroll).

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The FLSA contemplates individual liability, and it is consistent with Congress's intent to impose liability upon those who "control[ ] a corporation's financial affairs and can cause the corporation to compensate (or not to compensate) employees in accordance with the FLSA." *Lamonica v. Safe Hurricane Shutters* 711 F.3d 1299, 1313 (11th Cir. 2013) (quoting Baystate Alt. Staffing, Inc. v. Herman, 163 F.3d 668, 677 (1st Cir.1998)). In *Lamonica*, individuals who possessed less than twenty-five percent (25%) of ownership in an entity were found to be individually liable. *Id.*

Here, Mr. Tomkovitch is the sole owner of Emperor's and has absolute control over its financials and operations. Turner Decl. ¶ 3, Ex. 2 - Michael Dep. at 8:15-20, 64:24-65:6; Burgos Decl. ¶ 5. Tomkovitch had the authority to decide who could be hired and who would be fired. Burgos Decl. ¶ 5. Tomkovitch would give directions to managers at Emperor's. Burgos Decl. ¶ 5. As a result, Tomkovitch, the owner and operator of Emperor's, is also liable to Plaintiff in this matter. Therefore, Plaintiff's motion should be granted on this ground.

## VI. PLAINTIFF IS ENTITLED TO PARTIAL SUMMARY JUDGMENT BECAUSE DEFENDANTS CANNOT MEET THEIR BURDEN ON THEIR AFFIRMATIVE DEFENSE OF GOOD FAITH

Defendants have asserted the FLSA's good faith defense provisions under 29 U.S.C. § 260. FLSA exemptions, the Supreme Court has long counseled, "are to be narrowly construed against the employers seeking to assert them." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960). The employer has the burden of "establishing both the subjective and objective components of that good faith defense against liquidated damages." Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1163 (11th Cir. 2008).

Here, Defendants fail to meet their burden. Defendants had been put on notice that their conduct, rules, policies, and procedures violated the FLSA. Turner Decl. ¶ 3, Ex. 2 - Michael Dep. at 12:9-24, 35:18-21, 36:15-19, 45:15-46:3. Indeed, Defendant Tomkovitch was the owner of *Gold Club* which was sued on the same basis as this instant suit and this Court made the relevant ruling in the *Schofield* case. *Schofield v. Gold Club Tampa, Inc.*, No. 8:19-CV-3097-VMC-TGW, 2021 WL 533540 (M.D. Fla. Feb. 12, 2021).

However, instead of attempting to learn and comply with the FLSA, Defendants attempted to subvert it by providing dancers, including Plaintiff, with their "choice" to be an independent contractor. Further, throughout the discovery process when asked to detail the steps taken by Defendants to learn, ascertain, and comply with the FLSA, Defendants have failed to clearly identify any specific steps taken. Defendants bear the burden of proof on their affirmative defense and cannot hide evidence to surprise Plaintiff at trial. Fact discovery has closed. Defendants have failed to produce any concrete evidence as to good faith defense. As such, Plaintiff is entitled to summary judgment in her favor as to Defendants' affirmative defense of good faith.

## VII. PLAINTIFF IS ENTITLED TO PARTIAL SUMMARY JUDGMENT CONFIRMING THAT DEFENDANTS SHOULD RECEIVE NO OFFSET FOR PLAINTIFF'S WAGES

Defendants should not be allowed to offset the minimum wages Defendants owe to Plaintiff through the tip money Plaintiff earned from customers while working at Emperor's. Tips cannot count toward the hourly "regular rate of pay." *See Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 424*, 325 U.S. at 424 (1945). This issue has already been concretely decided in the Eleventh Circuit and courts around the country in Plaintiff's favor. *Compere v. Nusret Miami, LLC,* 28 F.4th 1180, 1186-87 (11th Cir. 2022); *Shaw v. Set Enterprises, Inc.*, 241 F. Supp. 3d 1318, 1328 (S.D. Fla.

2017); *McFeeley v. Jackson St. Entm't, LLC*, 825 F.3d 235 (4th Cir. 2016); *Hurst v. Youngelson*, 354 F. Supp. 3d 1362, 1384 (N.D. Ga. 2019) (noting, in the context of summary judgment, "[t]he proper inquiry is not whether her take-home pay (including tips) was more than the minimum wage, but whether Defendants paid her up to or above the minimum wage. 29 U.S.C. § 206(a)."). Further, to "reduce an employee's minimum wages by the amount of his or her income from gratuities, ... federal law strictly requires employers to: (1) inform employees that they intend to credit tips toward employees' minimum wages, and (2) allow employees to retain all of their income from tips. *Betras v. Oli-Car Inc.*, No. 2:21-CV-00873-CCW, 2021 WL 5239938, at *7 (W.D. Pa. Nov. 8, 2021).

To meet FLSA minimum wage provision, an employee must actually receive the minimum wages; merely altering records to indicate that the employee was paid is insufficient. Fair Labor Standards Act of 1938, § 6, 29 U.S.C.A. § 206; 29 C.F.R. § 531.35; *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1578–79 (11th Cir.1985). Private dance fees are paid by customers, not the Defendants, and thus the fees are not wages. Courts have generally concluded that, for purposes of the FLSA, these fees may be either tips or service charges. *See, e.g., McFeeley v. Jackson St. Entm't, LLC*, 825 F.3d 235, 246 (4th Cir. 2016); *Hart v. Rick's Cabaret Int'l, LLC,* 967 F. Supp. 2d 901, 926-34 (S.D.N.Y. 2013). However, to qualify as service charges, an employer must comply with applicable regulations in order to credit private dance fees paid by customers toward his or her minimum wage and overtime obligations under the FLSA.

Specifically, Department of Labor regulations define a service charge as a "compulsory charge for service...imposed on the customer by an employer's establishment." 29 C.F.R. § 531.55(a). Several federal courts have considered the question specifically at issue here: whether private dance fees can be credited toward

a club's minimum wage and overtime obligations as service charges. Courts have consistently found that the law imposes two requirements for an employer to claim this credit. First, the employer must include the service charge in its gross receipts. Second, the employer must distribute the service charge to its employees. *See, e.g., McFeeley*, 825 F.3d at 246 ("There are at least two prerequisites to counting 'service charges' as an offset to an employer's minimum-wage liability. The service charge 'must have been included in the establishment's gross receipts,'...and it must have been 'distributed by the employer to its employees.' " (citations omitted)); *Henderson v. 1400 Northside Drive, Inc.*, 110 F. Supp. 3d 1318, 1322 (N.D. Ga. 2015) ("Thus, at minimum, for a fee to constitute a "service charge," it must be (1) recorded in a company's gross receipts, and (2) distributed by the company to the employee."); Hart, 967 F. Supp. 2d at 929 (concluding the FLSA requires that a service charge be included in an employer's gross receipts and distributed by the employer).

Here, it is undisputed that Plaintiff's role at Emperor's was as an exotic dancer. Burgos Decl. ¶¶ 2, 3. As an exotic dancer, Plaintiff danced for the entertainment of Emperor's customers. *Id*. Those customers would pay Plaintiff for this entertainment. Burgos Decl. ¶ 13. More specifically, customers would give money to the club for Plaintiff's dances. Burgos Decl. ¶ 13. The club would then keep track of the amount of money Plaintiff earned (based on the amount of dances/customers), and then at the end of the night/shift the club would take a percentage of the money Plaintiff earned and give the rest to Plaintiff. Burgos Decl. ¶ 13. Plaintiff never received any wages from Defendants. Burgos Decl. ¶ 13. ***Further, Emperor's never mentioned a service charge of any kind to any of Plaintiff's customers regarding Plaintiff's dances.*** Burgos Decl. ¶ 13.

Therefore, Defendants should not be allowed to use Plaintiffs own earnings and tips from customers to offset Defendants' minimum wage requirements. Defendants' simply running dance fee tickets through their POS system does not make it part of the

gross receipts of the Club – and being a part of the gross receipts is a requirement for offsets under the FLSA as discussed above. As stated above, Defendants have submitted no evidence in discovery, but have the burden to show that 1) Emperor's separated out the precise amounts of any allegedly set dance fee charges from any other charges, especially tips, 2) Defendants included such amounts in its gross receipts – which are gross revenue under accounting terminology, and 3) Defendants paid every cent of those amounts to Plaintiff. *McFeeley*, 825 F.3d at 246.

In fact, Emperor's kept a portion of this money and only gave a percentage to Plaintiff. Burgos Decl. ¶ 13. Therefore, Defendants have not met their burden and cannot use the tip money Plaintiff received from customers while working at Emperor's to offset Defendants' minimum wage requirements under the FLSA. *Compere v. Nusret Miami, LLC,* 28 F.4th 1180, 1186-87 (11th Cir. 2022); *Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 424,* 325 U.S. at 424 (1945). As a result, this Court should grant Plaintiff's motion on this ground.

## VIII. PLAINTIFF IS ENTITLED TO PARTIAL SUMMARY JUDGMENT CONFIRMING DEFENDANTS' FAILURE TO COMPLY WITH THE DICTATES OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. §§ 201, ET SEQ. WAS WILLFUL

Plaintiff is entitled to liquidated damages and Plaintiff's claim against Emperor's should not be limited to the two-year statute of limitations under the FLSA, because Defendants' misclassification of Plaintiff for years was willful. A violation is "willful" within the meaning of the FLSA when "the employer either knew or showed reckless disregard" for whether the conduct in question violated the statute. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1165 (11th Cir. 2008).

Defendants attempt to hide their willfulness behind the guise that Emperor's "relinquishes control" as to how Plaintiff will be paid by offering dancers a "choice"

to be an Independent Contractor through the documents signed at hiring. Burgos Decl. ¶ 6. Defendants use this "choice" to willfully misclassify their dancers as independent contractors, including Plaintiff, with the hopes of subverting the FLSA. However, Defendants' owner, Tomkovitch, testified under oath that he knew that dancers such as Plaintiff were supposed to be classified as employees. Turner Decl. ¶ 3, Ex. 2 - Michael Dep. at 12:9-24, 35:18-21, 36:15-19, 45:15-46:3. Therefore, Defendants willfully ignored the knowledge that Defendants were employees and instead offered dancers, including Plaintiff, a faux choice of working as an independent contractor. Defendants plainly cannot offer a genuine issue of material fact to support the denial of Plaintiff's motion. *Celotex Corp.*, 477 U.S. at 323. Defendants evidenced a reckless disregard of the FLSA in their willful attempt to misclassify their dancers, including Plaintiff, with the hopes of subverting the FLSA. *McLaughlin*, 486 U.S. at 133.

As thoroughly discussed above through the six factors of the economic realities test, Plaintiff is an "employee" under the FLSA. Defendants' previous involvement in the *Schofield* case evidence their knowledge and willfulness in misclassifying Plaintiff in an attempt to avoid the FLSA. With such overwhelming evidence that dancers are employees under the FLSA, it is evident that Defendants willfully ignored this reality and instead kept up the façade of a choice for their dancers to be independent contractors in violation of federal law.

## IX.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant her motion for partial summary judgment in its entirety.

Dated:  September 22, 2023

CARPENTER & ZUCKERMAN
/s/ *Justice D. Turner*

_____
Justice D. Turner
***Attorneys for Plaintiff***

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on Friday, September 22, 2023 a true and correct copy of the attached **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT** and accompanying document were served via CM/ECF upon the following parties pursuant to Rule 5 of the Federal Rules of Civil Procedure:

Trescot Gear
Florida Bar Number 118216
**GEAR LAW, LLC**.
1405 West Swann Avenue
Tampa, Florida 33606
Tel.: (904) 654-6221
Fax.: (813) 337-0243
Email: Trescot@gearlawllc.com

***Attorney for Defendants***

*/s/ Justice D. Turner*
_____
Justice D. Turner
