# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

JAMIE BURGOS,

      Plaintiff,

v.                                       Case No: 8:22-cv-1171-KKM-TGW

EMPEROR'S TAMPA, INC.,
ENTERTAINMENT 2851 LLC, and
MICHAEL TOMKOVICH,

      Defendants.

_____

## ORDER

    Jamie Burgos works as an exotic dancer. She sues two strip clubs and the clubs'
owner for, among other things, failing to pay minimum wage pursuant to the Fair Labor
Standards Act (FLSA). *See* 29 U.S.C. § 206(a). She asks me to resolve five legal issues on
summary judgment. MSJ (Doc. 119). In her view, she was an 'employee' under the FLSA's
definition, the clubs' owner was an 'employer' under the FLSA's definition, all Defendants
acted in bad faith and willfully violated the FLSA, and Defendants may not use the money
she earned from customers to offset her wages. *Id.* at 2, 10–24. I agree with Burgos on the
first two issues but find summary judgment inappropriate as to the rest.

## I.    UNDISPUTED FACTS

Michael Tomkovich owns many strip clubs in Florida. Turner Decl. (Doc. 119-1) at 32. Three are relevant here. The first is Defendant Entertainment 2851, LLC. That club is also known as 'Emperor's,' 'Emperor's Pasco,' or 'Emperor's Gentlemen's Club.' *Id.* at 27, 99. It is located in Holiday, Florida. *Id.* The second is Defendant Emperor's Tampa, Inc., also known as ''Emperor's,' 'Emperor's Nude' or 'Emperor's fully nude.' *Id.* at 27–28; 36–37; 39–40; Sales Breakdowns (Doc. 120-2). Emperor's Nude is a club where full nudity is allowed but alcohol is not served. Turner Decl. at 47. There is a third club at the same location as Emperor's Nude called EMTB, which serves alcohol but does not host fully nude dancers. *Id.* at 33, 46–47. It is also known as 'Emperor's.' *Id.* The nature of the corporate relationship between Emperor's Nude and EMTB is unclear from the evidence presented. *See id.* at 46–51. EMTB is not a Defendant to this action. Am. Compl. (Doc. 95) ¶ 1. For clarity's sake, I refer to the first club as Entertainment 2851, the second as Emperor's Nude, and the third as EMTB.

Setting aside the differences as to whether the clubs offer full nudity or alcohol, the clubs otherwise all run in the same manner. They share the same colloquial name, 'Emperor's,' and the same owner, Tomkovich, who directs the managers of all three clubs as to "how they are supposed to handle business." Turner Decl. at 83. All three have similar policies on drug use, harassment, and certain kinds of record-keeping. *Id.* at 68–72. And

although an employment contract for Emperor's Nude is not in the record, it appears that all the clubs require their dancers to sign essentially the same contract. *Id.* at 5–20, 99–113 (EMTB and Entertainment 2851 contracts). The similarities are apparently so strong that the parties themselves often do not specify which 'Emperor's' they mean. *See, e.g.*, MSJ at 10; Resp. (Doc. 120) at 2. Thus, I assume that the policies for all three establishments are the same unless there is a reason to suspect otherwise.

Defendants have "no major requirements for dancers to work except that they are of legal age and are willing to dance nude or semi-nude." Burgos Decl. (Doc. 119-2) at 2. Defendants hired dancers "based on their attractiveness, not their skill," and "if a dancer is attractive, she would usually be hired promptly." *Id.*

Defendants set opening and closing hours, decide the length of dancer shifts, and do not allow dancers to work outside of club hours. *Id.* at 3, 4; *see also* Turner Decl. at 8 (providing in Burgos's contract that "a set schedule will be made available to [Burgos] which will be honored to prevent crowding or complications caused by an overabundance of [dancers]"). Defendants set the "base prices" that dancers charge for various dances. Burgos Decl. at 3. Defendants "sometimes" require dancers to sign in when they arrive.[1]

---

[1] Burgos also contends that dancers were sometimes required to "tip certain people at the club before [they] left." Burgos Decl. at 4. But Defendants dispute that allegation with an affidavit from Tomkovich denying the policy. (Doc. 120-4) at 1. They also produce a purported copy of their "no tip policy," which is a one-page document stating,

ATTENTION ENTERTAINERS AND DANCERS
THERE IS NO MANDATORY TIP POLICY

*Id* at 4; Turner Decl. at 80. And Defendants set rules for dancers and discipline them for violating those rules. Burgos Decl. at 4. For example, dancers are normally charged "stage fees," but if they arrive late to work, the fees are increased "to incentivize dancers to show up on time." *Id.* Moreover, Defendants, not dancers, control "which customers could enter and which customers were asked to leave" the clubs. *Id.* at 3.

Burgos worked as an exotic dancer for Emperor's Nude, Entertainment 2851, EMTB, or their corporate predecessors "for almost twenty years from 2001 to 2021." Burgos Decl. at 2; Turner Decl. at 5–20, 99–113. Although Burgos could earn money from customers through her dances, "customers would give the money for [her] VIP and floor dances to Emperor's first." Burgos Decl. at 3. Defendants would "keep track of the money [Burgos] earned based on the number of customers [Burgos] danced for, and then . . . take a percentage of the money [Burgos] earned and give [her] the rest." *Id.*

Burgos brings four causes of action in this suit against Defendants. Am. Compl. ¶¶ 75–103. Most relevant here is that all three Defendants failed to pay her a minimum wage. *Id.* ¶ 75–80. She also brings claims for illegal kickbacks, unlawful taking of tips, and forced tipping. *Id.* ¶ 81–103.

---

IF YOU ARE PRESSURED TO TIP BY ANY STAFF MEMBER (DJ'S BARENDER'S SERVER'S, [sic] ETC.), PLEASE ADDRESS THIS WITH THE MANAGER ON DUTY. IF THESE CONCERNS DO NOT GET RESOLVED IN A TIMELY MANNER, CALL THE CORPORATE OFFICE AT 813-215-2161.

(Doc. 120-3). This disputed material fact prevents resolution at summary judgment.

## II.   LEGAL STANDARD

Summary judgment is appropriate if no genuine dispute of material fact exists, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is material if it might affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant always bears the initial burden of informing the district court of the basis for its motion and identifying those parts of the record that demonstrate an absence of a genuine issue of material fact. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). When that burden is met, the burden shifts to the nonmovant to present evidentiary materials (e.g., affidavits, depositions, exhibits, etc.) demonstrating that there is a genuine issue of material fact, which precludes summary judgment. *Id.* A moving party is entitled to summary judgment if the nonmoving party "fail[s] to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

I review the record evidence as identified by the parties and draw all legitimate inferences in the nonmoving party's favor. *See Sconiers v. Lockhart*, 946 F.3d 1256, 1262 (11th Cir. 2020); *Reese v. Hebert*, 527 F.3d 1253, 1268 (11th Cir. 2008). Here, to the extent that the record is disputed or capable of multiple inferences, the Court draws them in favor of the non-movant.

## III.    ANALYSIS

Burgos moves for partial summary judgment on five issues. MSJ at 2. First, she argues that she should be considered an employee under the FLSA, not an independent contractor. *Id.* at 10–17. Second, she argues that "Tomkovich was an employer and is therefore personally liable" to Burgos under the FLSA. *Id.* at 2, 17–19. Third, she argues that Defendants cannot prevail on their affirmative defense of good faith as a matter of law. *Id.* at 19–20. Fourth, she argues that Defendants' failure to comply with the FLSA was willful as a matter of law. *Id.* at 23–24. Fifth, she argues that Defendants cannot receive offsets for renumeration Burgos received from customers. *Id.* at 20–23.

But first, a pair of preliminary matters needs attention. In rebuttal to the motion for partial summary judgment, Defendants raise an argument that the FLSA does not apply to their business at all. Resp. at 3. And in her reply, Burgos argues that I should not consider certain evidence presented by Defendants—namely, a letter from and a declaration by Adam Evans, a manager at EMTB and Emperor's Nude—because he was not identified as a witness with information during discovery. Reply (Doc. 123) at 2–4; Evans Letter (Doc. 120-6).

I resolve these preliminary issues as follows. For the most part, Burgos's motion does not require resolving whether the FLSA applies to some or all of Defendants. But to the extent that Burgos seeks summary judgment on the threshold question of whether the

FLSA governs, I deny the motion because she has not shown the absence of a genuine dispute of material fact on that issue. And I cannot consider the evidence that was not made available during discovery, so I disregard Evans's statements.

As to the merits of the motion, I conclude that Burgos was Defendants' employee and that Tomkovich was an employer. Yet I cannot decide whether Defendants' alleged FLSA violations were in good faith or willful because I cannot decide at this juncture that the FLSA applies to them at all. Likewise, I cannot decide whether Burgos's earnings offset her wages because important information about the nature of her renumeration is missing from the record.

## A. The FLSA's Applicability Is a Genuine Issue of Material Fact

Defendants contend that the FLSA does not apply to their businesses because their gross annual sales do not exceed $500,000.00. Resp. at 3. Because Defendants do not move for summary judgment on this issue, I can consider the argument only insofar as it creates a genuine issue of material fact on one of Burgos's grounds for summary judgment. Most of the issues Burgos raises are logically distinct from the question of whether the FLSA applies. For example, I can decide that Burgos would be considered an employee under the FLSA without deciding that the FLSA, in fact, applies. The same is true for deciding whether Tomkovich was an employer and whether Defendants can receive offsets for renumeration that Burgos received from customers. Yet there are two grounds for summary

judgment that are bound up with the FLSA's applicability: whether Defendants' failure to comply with the FLSA was willful as a matter of law and whether an affirmative defense of good faith is available to Defendants as a matter of law. I discuss the law and facts related to the FLSA threshold in this section and explain how the question of its applicability bears upon Burgos's related grounds for summary judgment in later sections.

Defendants attach charts with gross sales data that they claim prove that they make less than $500,000.00 in annual gross sales. Sales Breakdowns at 1–3. Yet the evidence does not paint a clear picture, and the parties' briefing is less than helpful. (Indeed, rather than clarify her position on this affirmative defense, Burgos ignores the issue entirely. *See generally* Reply.) Nevertheless, I conclude that Defendants have raised a genuine issue of material fact as to whether the FLSA applies because of this factual uncertainty.

The charts give sales data only for Emperor's Nude, not for Entertainment 2851. Sales Breakdowns at 1–3. The chart for 2021 states that Emperor's Nude took in $502,894.42 in total sales. *Id.* at 1. Although Defendants do not mention this fact in their response, Tomkovich indicated in his deposition that he believed this number overestimated December beverage sales and that the true total sales number was likely under $500,000.00. Turner Decl. at 87–88. In any case, total sales apparently fell to $305,630.03 in 2022. Sales Breakdowns at 2. The 2023 chart provides numbers only through July, at which point total sales were $157,161.71. *Id.* at 3.

Nothing is said about the sales data for Entertainment 2851 in the briefing. That information seems to have been shown to Tomkovich during his deposition; the dialogue between him and counsel suggests that Entertainment 2851 made less than $295,000.00 in 2021 and less than $460,000.00 in 2022. Turner Decl. at 85–87. But because the parties have not provided that information directly or briefed the issue, I cannot draw any more definite conclusions.

The FLSA covers business enterprises with "at least $500,000 of 'annual gross volume of sales made or business done.' " *Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1220 (11th Cir. 2010) (per curiam) (quoting 29 U.S.C. § 203(s)(1)(A)(ii)). That $500,000.00 threshold takes into account gross sales and any other business activity in which the enterprise engages, such as loans or leases. *See* 29 C.F.R. § 779.258.

Whether the FLSA applies to a business during a given year depends on how much that business makes *during that year*. *See* 29 U.S.C. § 206 (requiring an employer to pay minimum wages "to each of his employees who in any workweek is . . . employed in an enterprise engaged in commerce"); *see also Collar v. Abalux, Inc.*, No. 16-20872-CIV, 2018 WL 7364573, at *3–4 (S.D. Fla. Jan. 22, 2018), *aff'd*, 895 F.3d 1278 (11th Cir. 2018) (determining FLSA coverage on a year-by-year basis). Burgos worked at the strip clubs from 2001 through 2021. MSJ at 6. At most, Burgos claims that the applicable statute of limitations stretches back three years before she filed her lawsuit in May 2022. *See* MSJ at

2. Thus, the relevant years are 2019, 2020, and 2021.

At minimum, Burgos has failed to identify those parts of the record that demonstrate an absence of a genuine issue of material fact on this affirmative defense. *Clark*, 929 F.2d at 608. The evidence before me is deeply ambiguous, and Burgos does not even address it. In the only relevant year for which Emperor's Nude provides data, it is unclear whether it surpassed the FLSA threshold. *Compare* Sales Breakdowns at 1 (showing gross sales of $502,894.42 in 2021) *with* Turner Decl. at 87–88 (estimating a number below $500,000.00). And neither party addresses the evidence as to Entertainment 2851, although it seems that business fell below the FLSA threshold in 2021. Turner Decl. at 85–87. At minimum, Burgos has yet to establish that the FLSA applies.

To be clear, this order addresses only the grounds on which Burgos moves for summary judgment. Neither party moves for summary judgment on the FLSA threshold, so both parties are free to argue the point at trial. At this juncture, my conclusion is purely negative: insofar as Burgos's motion relies on the applicability of FLSA, she has not shown the absence of a genuine issue of material fact.

### B. Evans's Declaration Cannot Be Considered

Defendants submit a letter and a declaration from Adam Evans, the general manager at EMTB and Emperor's Nude. He states that "Burgos never worked for EMTB after I took over in November of 2018." Evans Letter. But EMTB is not a Defendant.

10

Moreover, Evans's story is not entirely consistent. *See* Evans Decl. (Doc. 120-5) at 1 ("I was told recently she worked a few dayshift [sic], so I would assume that [Burgos] hid from me knowing I would not renew any dancer's contract who looks as bad as she does.")

In her reply, Burgos protests that Defendants never told her that Evans was likely to have discoverable information or how to contact him. Reply at 2–4. She attaches a screenshot of Defendants' response to her interrogatory, which asked for the names and contact information of any individual likely to have discoverable information. *Id.* at 3. Defendants did not list Evans. *Id.* To date, Defendants have not disputed that Evans's information was not provided during discovery.

Therefore, Defendants may not rely on Evans's declaration or letter. Federal Rule of Civil Procedure 26(a)(1)(A)(i) requires parties to give "the name and, if known, the address and telephone number of each individual likely to have discoverable information— along with the subjects of that information—that the disclosing party may use to support its claims or defenses." And Rule 37(c)(1) names the appropriate penalty: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, . . . unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). Defendants have made no argument that the failure was substantially justified or is harmless.

### C. Burgos Was an Employee

Next, I conclude that Burgos was an employee—not an independent contractor.

The FLSA applies only to employees. 29 U.S.C. § 206. "To determine whether an individual falls into the category of covered 'employee' or exempted 'independent contractor,' courts look to the 'economic reality' of the relationship between the alleged employee and alleged employer and whether that relationship demonstrates dependence." *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013). "Ultimately, in considering economic dependence, the court focuses on whether an individual is in business for [herself] or is dependent upon finding employment in the business of others." *Id.* at 1312 (quotations omitted).[2]

Courts use six factors to evaluate the economic realities of an alleged employment relationship. *Id.* These are: (1) "the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;" (2) "the alleged employee's opportunity for profit or loss depending upon his managerial skill;" (3) "the alleged employee's investment in equipment or materials required for his task, or his employment of workers;" (4) "whether the service rendered requires a special skill;" (5) "the degree of

---

[2] Although Burgos's contracts are not central to this analysis, it is perhaps worth noting that the contracts contradict themselves as to whether Burgos is an employee. Some sections explicitly disavow the notion of an employment relationship. *See, e.g.*, Turner Decl. at 10–11; 104–105. But others assume that Burgos is an employee. For example, her contracts established a grievance process for "disputes, claims, or controversies." *Id.* at 12, 106. Those claims are said to arise "out of [Burgos's] employment [or] the separation of employment." *Id.* The grievance process also assumes that Burgos would have a supervisor or manager to whom she could bring grievances. *Id.* at 13, 18, 107, 112.

permanency and duration of the working relationship;" and (6) "the extent to which the service rendered is an integral part of the alleged employer's business." *Id.*

Exotic dancers are almost always considered employees under this test. *See Gardner v. Country Club, Inc.*, No. 4:13-CV-03399-BHH, 2015 WL 7783556, at *12 (D.S.C. Dec. 3, 2015) (collecting cases); *Manasco v. Best in Town, Inc.*, No. 2:21-CV-00381, 2023 WL 5963434, at *7 (N.D. Ala. Sept. 13, 2023) ("The Eleventh Circuit has directly not resolved this question as it pertains to exotic dancers, but district courts in the Eleventh Circuit have uniformly found exotic dancers to be employees of the clubs in which they perform." (quotations and brackets omitted)). Defendants barely contest the issue. Burgos spent a substantial portion of her motion arguing that she should be considered an employee. MSJ at 10–17. Yet Defendants merely recite a modified version of the 'economic realities' factors and perfunctorily assert that those factors weigh in their favor. *See* Resp. at 5–6. Even so, I will consider each factor independently as it pertains to Burgos.

### 1. Control

Burgos avers that Defendants exercised significant control over her. She points out that Defendants' policies set limits on when and how long she could work. Burgos Decl. at 3–4. Likewise, Defendants set the "base prices" for the dances that Burgos offered customers. *Id.* at 3. Defendants also required dancers to sign in when they arrived and disciplined them for arriving late by charging them increased "stage fees." *Id.* at 4; Turner

Decl. at 80.

Defendants respond in a single sentence: "The Plaintiff was able to come and go as she pleased, make her own hours and schedule, have alternate modes of employment, and determine how and when she offered her labor to the Defendants." Resp. at 6. Defendants then assert without explanation that the declarations from Evans and Tomkovich "show a significant factual rebuttal of the Plaintiff's statements." *Id.*

I agree with Burgos. As explained, I cannot consider Evans's declaration. Tomkovich's declaration merely represents that his businesses enforce a "no tipping policy" and pay dancers minimum wage. Tomkovich Decl. (Doc. 120-4) at 1. And I agree with numerous other courts from this circuit that (a) setting dancers' work hours, (b) establishing minimum rates for dances, and (c) using a fee system that varies based on the time of a dancer's arrival indicates control. *See, e.g.*, *Manasco*, 2023 WL 5963434, at *8–9; *Schofield v. Gold Club Tampa, Inc.*, No. 8:19-CV-3097-VMC-TGW, 2021 WL 533540, at *5–7 (M.D. Fla. Feb. 12, 2021).

### 2. Opportunity for Profit or Loss

Burgos had little "opportunity for profit or loss depending upon [her] managerial skill." *Scantland*, 721 F.3d at 1312. She had limited control over who could approach her for dances; Defendants decided which customers could enter and which would be asked to leave. Burgos Decl. at 3. She had limited control over when they could approach her—as

already mentioned, Defendants set opening and closing hours and the length of dancers' shifts. *Id.* at 3–4. And she only had limited control over what she could charge her customers because Defendants set base prices for dancers. *Id.* Along with limited opportunities for profit, Burgos had limited opportunities for loss. Defendants paid for the leases and the clubs' bills. *Id.* at 4; Turner Decl. at 79. In sum, Defendants substantially controlled Burgos's opportunities for profit or loss. And Defendants do not identify any way in which Burgos's managerial skill could have influenced her opportunities for profit or loss. Thus, Defendants' "risk of profit and loss . . . far exceeded that of" Burgos. *Schofield*, 2021 WL 533540, at *8.

### 3. Investment in Equipment or Materials

Burgos's "investment in equipment or materials" was minor compared to the Defendants' investment. *Scantland*, 721 F.3d at 1317–18; *see also Schofield*, 2021 WL 533540, at *8. Defendants' response does not offer any reason why this factor should weigh in their favor. Resp. at 5–6. Based on the evidence presented by the parties, I agree with Burgos. Neither party points to any investments whatsoever made by Burgos, but courts in similar cases have credited dancers for investing in "hair, makeup, and costumes." *Shaw v. Set Enterprises, Inc.*, 241 F. Supp. 3d 1318, 1326 (S.D. Fla. 2017). Burgos's contracts with Defendants contemplate similar expenses. Turner Decl. at 9, 103. Yet I must set these costs against those of Defendants, who paid for "the stage," "all of the equipment such as the

poles [and] speakers," and the "facilities, bills, utilities, . . . [and] advertising." Burgos Decl. at 4. Defendants' investments clearly dwarfed Burgos's.

### 4.   Special Skill

Burgos's work did not require a special skill. Again, Defendants have "no major requirements for dancers to work except that they are of legal age and are willing to dance nude or semi-nude." Burgos Decl. at 2. Burgos testifies that Defendants hired dancers "based on their attractiveness, not their skill" and that "if a dancer is attractive, she would usually be hired promptly." *Id.* Defendants offer no admissible evidence in response. I agree with Burgos and every other district court from my circuit: "there is no special skill required to be an exotic dancer." *Schofield*, 2021 WL 533540, at *9 (quotations omitted); *see also Manasco*, 2023 WL 5963434, at *12; *Shaw*, 241 F. Supp. 3d at 1326; *Harrell v. Diamond A Ent., Inc.*, 992 F. Supp. 1343, 1351 (M.D. Fla. 1997).

### 5.   Permanence and Duration of Employment

Burgos enjoyed an unusually permanent and lengthy working relationship with Defendants. Courts have minimized this factor when considering the employment status of exotic dancers due to the transitory nature of their work. *Shaw*, 241 F. Supp. 3d at 1327; *McFeeley v. Jackson St. Ent., LLC*, 825 F.3d 235, 244 (4th Cir. 2016). I do not disagree that "nude entertainers tend to be transient or itinerant." *Clincy v. Galardi S. Enters., Inc.*, 808 F. Supp. 2d 1326, 1348 (N.D. Ga. 2011). But Burgos worked for Emperor's Nude,

Entertainment 2851, and their corporate predecessors "for almost twenty years from 2001 to 2021."[3] Burgos Decl. at 2. For context, this factor has weighed in favor of plaintiffs where "plaintiffs worked for [a defendant] for an average of more than five years." *Scantland*, 721 F.3d at 1318; *cf. Clincy*, 808 F. Supp. 2d at 1348 (stating that reasonable jurors could diverge on whether a year was sufficient).

To be sure, other aspects of her employment might not suggest permanency. Burgos was free to work for employers besides the Defendants. Turner Decl. at 10, 104; *see also Shaw*, 241 F. Supp. 3d at 1327 (weighing this factor against exotic dancers where they "were not restricted from working at other clubs or in other lines of work"); *but see Manasco* 2023 WL 5963434, at *12 (noting that "dancers' work at other clubs . . . does not appear meaningfully different than any other employee working multiple jobs."). And it is unclear whether Burgos and the other dancers "were free to choose when they worked and were not required to provide advance notice of their selected shifts." *Shaw*, 241 F. Supp. 3d at 1327. Here, the contract implies that Burgos had freedom to choose her shifts but was required to provide advance notice, though neither party mentions that fact. Turner Decl. at 10, 104 (assuming that Burgos will "request[] and agree[] to perform" on certain dates).

Drawing all legitimate inferences in the Defendants' favor, this factor slightly

---

[3] As I explained earlier, Evans (inconsistently) disputes that Burgos worked at the clubs for this length of time. *See* Evans Letter; Evans Decl. at 1. Yet I cannot consider that evidence.

weighs against finding an employment relationship. Nevertheless, one factor does not mean that a reasonable jury could find Burgos to be a contractor. *See Manasco*, 2023 WL 5963434, at *13 (concluding as a matter of law "that the economic reality is that [exotic dancers] are employees of [a strip club]" despite the permanency and duration factor). That is especially true regarding this factor, which courts often assign less weight in the exotic-dancer context. *Id.* at *12–13.

### 6.   Integral Part of the Business

Burgos's services were "an integral part of the alleged employer's business." *Scantland*, 721 F.3d at 1319. The sexual objectification of dancers is not just an aspect of Defendants' business model—it is the whole point of the enterprise. Perhaps recognizing that it would not weigh in their favor, Defendants omit this factor entirely from their list of factors I should consider. Resp. at 5–6. But the truth weighs heavily in favor of Burgos's argument.

### 7.   Weighing the Factors

Based on the foregoing, Burgos is entitled to summary judgment on the issue of whether she is an employee. Five of the six factors weigh in favor of employee status. Defendants offer no evidence and essentially no argument to the contrary. The lone factor weighing in favor of contractor status is at best a mixed bag for Defendants; it is also regarded as the least important factor in this context. Moreover, courts are in near-

unanimous agreement that exotic dancers are generally employees, not independent contractors. Taking all this into consideration, I conclude that no reasonable jury would find that Burgos was an independent contractor.

### D. Tomkovich Is an Employer

Tomkovich is an employer under the FLSA. *See* 29 U.S.C. § 216(b) (creating a private right of action under the FLSA against employers). The FLSA defines 'employer' to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "Based on this broad definition . . . [the Eleventh Circuit has] held that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation." *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1309 (11th Cir. 2013) (quotations omitted). As the sole owner of Emperor's Nude and Entertainment 2851, Tomkovich controlled their operations. Tomkovich "direct[s] the managers of [his clubs] how they are supposed to handle business." Turner Decl. at 83. He has final authority over those managers and gives directions to them. *Id.*; Burgos Decl. at 2. He controls Defendants' finances and has "the authority to decide who could be hired and who would be fired." Burgos Decl. at 2. He also controls opening and closing hours. *Id.* at 4. Tomkovich does not mention this issue in his response, let alone present evidence to create a genuine dispute of material fact. *See generally* Resp. Therefore, I conclude that Burgos has carried her burden for summary

judgment on this issue.

### E. Defendants' Good Faith Defense Survives Summary Judgment

I cannot grant summary judgment on whether the FLSA's good faith defense applies. *See* 29 U.S.C. § 260. Where a jury finds that the FLSA's overtime or minimum wage provisions have been violated, "the district court generally must add an award of liquidated damages[,] . . . which doubles the total damages awarded." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1163 (11th Cir. 2008) (citing 29 U.S.C. § 216(b)). But the judge may in her discretion reduce or eliminate liquidated damages "if the employer shows . . . [that he acted] in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260. Courts interpret this language as establishing a requirement of both "subjective and objective good faith." *Alvarez Perez*, 515 F.3d at 1163.

Burgos has not shown the absence of a genuine issue of material fact as to this defense. As explained earlier, it is not clear whether Emperor's Nude or Entertainment 2851 generated enough revenue for the FLSA to apply. And if the Defendants had a subjectively sincere and objectively reasonable belief that their businesses did not surpass the FLSA threshold, then they could avail themselves of the good faith defense. Burgos avers that Defendants were put on notice that their policies violated the FLSA because of previous actions against Tomkovich's other businesses. *See* MSJ at 20 (citing *Schofield*,

2021 WL 533540, at *1). But the fact that one of Tomkovich's businesses passed the FLSA threshold does not mean his others do. Given the confused state of the evidence on this point, Burgos has not excluded the possibility that Defendants acted in good faith. Still, Defendants should remember that "[e]ven inexperienced businessmen cannot claim good faith when they blindly operate a business without making any investigation as to their responsibilities under the labor laws." *P&k Rest. Enter., LLC v. Jackson*, 758 F. App'x 844, 850 (11th Cir. 2019) (per curiam) (quoting *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 469 (5th Cir. 1979)). If evidence at trial shows that Defendants knew or should have known that the FLSA applied to them, liquidated damages are likely appropriate.

### F. There Is a Genuine Dispute Regarding the Alleged 'Willful Violation'

The FLSA's statute of limitations increases from two years to three if a plaintiff's claim "aris[es] out of a willful violation." 29 U.S.C. § 255(a). A 'willful violation' is established by a preponderance of the evidence that the "employer either knew that its conduct was prohibited by the statute or showed reckless disregard about whether it was." *Alvarez Perez*, 515 F.3d at 1163. Burgos focuses her arguments on Defendants' alleged knowledge that she was an employee, not an independent contractor. MSJ at 23–24. But there is a different problem with her argument. Again, it is unclear whether Defendants (a) generated enough revenue for the FLSA to apply or (b) if they did, whether they knew

or should have known that fact. Burgos has not shown an absence of a genuine dispute of material fact on this issue, so summary judgment is inappropriate.

### G. Burgos's Earnings Might Offset Minimum Wage Requirements

Finally, Burgos argues that Defendants cannot count the money she earned from customers to offset her minimum wages. The FLSA does not generally allow employers to use tip money to satisfy their minimum wage obligations. 29 U.S.C. § 207(h)(1); *see also* *Compere v. Nusret Miami, LLC*, 28 F.4th 1180, 1181–82 (11th Cir. 2022). By contrast, employers may use service charges to satisfy those obligations. *Compere*, *28 F.4th* at 1182; *see also* 29 C.F.R. § 531.55. Burgos argues that her earnings from customers were tips. MSJ at 20–23.

Department of Labor regulations define a tip as "a sum presented by a customer as a gift or gratuity in recognition of some service performed for the customer." 29 C.F.R. § 531.52(a). Those regulations also specify that service charges are "imposed on a customer by an employer's establishment" and sometimes are "distributed by the employer to its employees." *Id.* § 531.55(a); *see also Compere*, 28 F.4th at 1186–89 (relying on these regulations to determine that a service charge could count towards minimum wage requirements). As other courts have noted, this regulatory language implies that the revenue generated by a service charge is part of a company's gross receipts. *Henderson v. 1400 Northside Drive, Inc.*, 110 F. Supp. 3d 1318, 1322 (N.D. Ga. 2015). It does not, as

Burgos suggests, imply that "every cent" of a service charge must be used to offset wages. MSJ at 23.

Burgos has failed to "demonstrate the absence of a genuine issue of material fact." *Clark*, 929 F.2d at 608 (quotations omitted). Burgos states that Defendants set base prices for lap dances and VIP dances. Burgos Decl. at 3. Although customers "would pay [Burgos] for this entertainment . . . customers would give the money for [her] VIP and floor dances to Emperor's first." *Id.* Defendants "would then keep track of the money [Burgos] earned based on the number of customers [Burgos] danced for, and then . . . take a percentage of the money [Burgos] earned and give [her] the rest." *Id.*

Those facts are far too ambiguous to merit summary judgment. First, it is unclear what amount of Burgos's earnings was derived from the base prices set by Defendants and how much was given over and above those prices. To the extent Burgos's earnings came from the former category, they could not be considered tips. Second, even if the money Burgos earned did not come from the base prices set by Defendants, that could be because Burgos charged her customers an amount above the base price. If so, the money would likely not count as a "a gift or gratuity." 29 C.F.R. § 531.52(a). Third, the fact that Burgos's customers gave the money first to Defendants and that Defendants later paid a percentage to Burgos is consistent with the notion that the money was a service charge "distributed by the employer to its employees." *Id.* § 531.55(a). Fourth, neither party presents any evidence

as to whether Defendants included this money in their gross receipts. It is not listed as a break-out item on the sales charts for Emperor's Nude. Sales Breakdowns at 1–3. Fifth, Burgos does not explain whether she received any compensation for services for which the Defendants did not set base prices. She only specifies that Defendants set base prices for lap dances and VIP dances. Burgos Decl. at 3. Sixth, Burgos does not explain whether she received any compensation for services that was not first given to Defendants and later partially paid out to her. She only specifies that customers gave Defendants money earned from floor and VIP dances. *Id.* Without this or similar evidence, I cannot ascertain whether (or by how much) Burgos's earnings could offset the wages she may be owed.

## II.   CONCLUSION

For the above reasons, Burgos is entitled to partial summary judgment as to her status as an employee and Tomkovich's status as an employer. Accordingly, the following is **ORDERED**:

1.   Burgos's Motion for Summary Judgment (Doc. 119) is **GRANTED IN PART** and **DENIED IN PART**.

2.   The Court finds that, as a matter of law, Burgos was an employee of Defendants within the meaning of the FLSA.

3.   The Court finds that, as a matter of law, Tomkovich was an employer of Burgos within the meaning of the FLSA.

4. But the Court does not determine whether the FLSA applies to Defendants because of the genuine disputes of material fact on the issue.

5. The Court does not determine whether the FLSA's good faith defense applies.

6. The Court does not determine whether Defendants willfully violated the FLSA.

7. The Court also does not determine whether the money Burgos earned from customers can offset her minimum wages.

**ORDERED** in Tampa, Florida, on January 22, 2024.

Kathryn Kimball Mizelle
United States District Judge